**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

**GENERAL FORMULATIONS, INC.**,
  a Michigan corporation,

        Plaintiff,

  v.

**QUE MEDIA, INC.**,
  a California corporation,

        Defendant.

Civil Action No. _____

Hon. _____

## COMPLAINT

General Formulations, Inc. ("GF"), through its attorneys, for its Complaint against Que Media, Inc. ("Que"), alleges:

1. Plaintiff GF is a Michigan corporation having its principal place of business at 320 S. Union, Sparta, Michigan 49345.

2. Defendant Que is a California corporation having its principal place of business at 9097 Pulsar Ct. Corona, CA 92883. Its agent, Michael Monarque, may be served at the same address.

## JURISDICTION AND VENUE

3. This is an action arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

4. This Court has subject matter jurisdiction over the claims arising under the Lanham Act based on 15 U.S.C. § 1121(a), because the claims arise under federal law. This Court also has subject matter jurisdiction over all of the claims based on 28 U.S.C. § 1332 because GF and Que are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. Supplemental jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367(a)

because the state law claims are so related to the federal claims that they form part of the same case and controversy.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and governing case law. Plaintiff GF is located and does business in this judicial district. Que availed itself of this district by specifically targeting its actions alleged herein toward GF, such that the injury caused by Que's actions were specifically and intentionally felt primarily in this district.

## **GENERAL ALLEGATIONS**

6. GF incorporates by reference herein each of the preceding paragraphs.

### **GF's Popular MOTOMARK® Vinyls and Laminates**

7. GF is a family-owned, global manufacturer of pressure-sensitive print media headquartered in the USA since 1953. GF offers a cross-platform portfolio of film and laminate solutions that stick, which include rolls for wide format and sheets for narrow format digital printers, as well as offset print technologies.

8. GF's customers have unique and diverse needs, which GF meets by offering a wide range of both solvent and emulsion based adhesive coating capabilities. To complement its coating capacity, GF also offers one of the largest converting operations in the industry, specializing in slitting, sheeting, punching and packaging. Its extensive converting capacity gives GF's customers access to press-ready sheets and custom slit rolls in as little as 1 to 3 days.

9. Among GF's most popular product lines is MOTOMARK®, which includes the following:

    a. MOTOMARK® GRIP, a specially formulated, premium flexible matte white PVC film. This film has a unique "High Bond" solvent acrylic pressure sensitive adhesive with a 90# layflat liner. The adhesive is

      formulated for the powersport graphic and decal markets. MOTOMARK® can be printed on a variety of solvent-based, latex, UV and thermal printers that are commonly used in wide format. This product may also be printed on using other printing processes such as UV screen and UV curable offset but must be tested before production.

    b. MOTOMARK® ARMOR is a flexible, gloss clear laminate that offers UV protection and is designed for use as a protective overlaminating film when used in combination with MOTOMARK® GRIP vinyl. The adhesive system is formulated to adhere to most common solvent, eco-solvent, latex, thermal, UV, offset and screen inks.

10.    MOTOMARK® is recommended for a variety of applications including quads, snowmobiles, motocross, powersport vehicles, helmets, and carts.

11.    In recognition of the goodwill inherent in the MOTOMARK® brand, the U.S. Patent and Trademark Office has granted to GF the following federal trademark registration:

| Reg. No. | Mark | Int'l Class | Goods/Services |
|---|---|---|---|
| 4022644 | MOTOMARK | 17 | Pressure sensitive vinyl film used to apply graphics and messages to uneven surfaces |

12.    This registration was issued in September 2011, citing a first use date in December 2010, and is now incontestable.

13.    Collectively, the foregoing registration and related common law rights arising out of GF's use in commerce of its MOTOMARK-formative trademarks will be referred to herein as "GF's Marks," and the goods provided in connection therewith by GF, its affiliates, and/or its licensees (the goodwill in which all accrues to GF's benefit) are "GF's Goods."

3

14. GF's Goods provided under GF's Marks have been extensively and continuously sold, marketed, advertised and promoted throughout the United States. As a result of the quality of GF's Goods and the widespread promotion thereof under GF's Marks, the goods have met with great commercial success and widespread consumer and media recognition. In addition, GF's Marks have become symbols of GF and its related companies. GF's Goods, and GF's goodwill, had come to be associated with GF prior to any use in commerce by Que.

**Que's Use of the Infringing Marks MOTOPRINT and MOTOLAM**

15. Based in California and Hong Kong, Que advertises itself as a global coating manufacturer of aqueous, solvent / eco-solvent, latex, UV, and color laser printable media for display graphics, point-of-sale advertising, and photo reproduction.

16. Que has begun advertising a polymeric, adhesive vinyl and a high-gloss laminate film ("Que's Goods") it calls MOTOPRINT and MOTOLAM, respectively (the "Infringing Marks"). These products are advertised for use together on snowmobiles and other outdoor sport vehicles, as shown in the email advertisement below recently published by one of Que's distributors:

4



17.     These products are designed to be put to the exact same use, and are marketed to the exact same customers, as GF's MOTOMARK® products. Indeed, the distributor who published the foregoing advertisement sells both parties' products.

**GF's Attempts to Resolve the Matter Without Litigation**

18.     On August 7, 2024, GF, through counsel, sent Que a cease-and-desist letter that sought an end to Que's use of its Infringing Marks. **Ex A**.

19.     On August 26, 2024, Que, through counsel, responded. Incredibly, Que refused to acknowledge the obvious likelihood of confusion between the parties' marks. **Ex B**.

20.     Each of the factors articulated by the Sixth Circuit Court of Appeals in *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985) for determining likelihood of confusion favor a finding that the Infringing Marks are likely to cause confusion with GF's Marks:

   a. GF's marks are strong—both conceptually, because they are arbitrary and inherently distinctive, and commercially, because they are used with one of GF's longest-running and most successful product lines.

   b. GF's Goods and Que's Goods are materially identical, which weighs heavily in favor of finding likely confusion.

   c. The parties' marks are highly similar, with each featuring MOTO- as its dominant portion.

   d. On information and belief, customers have already been actually confused between the parties' marks.

   e. The parties' goods are sold by the same distributors through the same marketing channels.

    f. Customers are not likely to exercise a high degree of care in distinguishing between the parties' marks, especially when they encounter both marks in the same marketing context.

    g. On information and belief, Que could only have intended to trade off of GF's goodwill. The limited number of options available for similar goods and the length of time GF has used its marks compels the conclusion that Que was well-aware of GF's Marks when it chose its own for identical goods.

    h. The relevant product lines have a good chance of expanding in the future, since both parties already offer a wider variety of goods and services than those that currently bear the marks at issue.

21. Que's use of its Infringing Marks on Que's Goods has caused, and is causing, serious and irreparable harm to the integrity and goodwill of GF's Marks.

22. If Que is permitted to continue to use its Infringing Marks, GF will continue to suffer irreparable harm for which there is no adequate remedy at law.

**COUNT I**
**TRADEMARK INFRINGEMENT**
**LANHAM ACT – 15 U.S.C. § 1114(1)**

23. GF incorporates by reference herein all of the preceding paragraphs.

24. GF exclusively owns MOTOMARK®.

25. GF has consistently used MOTOMARK® in interstate commerce in connection with the advertising and promotion of GF's Goods since long before Que began use of its Infringing Marks. MOTOMARK® therefore has priority over the Infringing Marks.

26. MOTOMARK® is not functional or merely descriptive. It is inherently distinctive, being arbitrary or, at the very least, a suggestive mark.

27. MOTOMARK® has acquired distinctiveness. Thousands of customers encounter and/or purchase GF's Goods on a daily basis across the country and have done so for years. This constant exposure has developed a strong association between GF and MOTOMARK®.

28. By virtue of the fact that it is federally registered and that registration is incontestable, GF's MOTOMARK® is legally presumed to be distinctive.

29. The Infringing Marks are a colorable imitation of MOTOMARK®. Although there may be very minor differences between the Infringing Marks and MOTOMARK®, they both create a similar commercial impression.

30. Upon information and belief, Que's unauthorized use of colorable imitations of MOTOMARK® has caused, and likely will cause, confusion, mistake, or deception in the relevant consumer market.

31. Que's unauthorized use of colorable imitations of MOTOMARK® constitutes trademark infringement in violation of 15 U.S.C. §§ 1114 and 1117.

32. Que has acted in bad faith and willfully in adopting colorable imitations of MOTOMARK® in connection with the sale of Que's Goods in an effort to reap the benefits of the goodwill associated with MOTOMARK®.

33. Que's infringing acts have caused and will continue to cause GF to suffer irreparable injuries to its reputation and goodwill. GF does not have an adequate remedy at law to recover for this harm, and therefore, it is entitled to injunctive relief.

34. This is an exceptional case pursuant to 15 U.S.C. § 1117.

35. By reason of the above, GF is entitled to injunctive relief against Que that permanently restrains Que from further acts of trademark infringement and to any damages that

have been caused by Que's aforementioned acts, including, but not limited to, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## LANHAM ACT – 15 U.S.C. § 1125(a)

36. GF incorporates by reference herein all of the preceding paragraphs.

37. GF owns trademark rights in the GF Marks.

38. GF's Marks have secondary meaning gained through prominent commercial use across the country.

39. Que's conduct as alleged herein constitutes trademark infringement and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40. By reason of the above, GF is entitled to injunctive relief against Que that permanently restrains Que from further acts of trademark infringement and to any damages that have been caused by Que's aforementioned acts, including but not limited to, treble damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT III
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## IN VIOLATION OF STATE LAW

41. GF incorporates by reference herein all of the preceding paragraphs.

42. By virtue of Que's acts hereinabove pleaded, Que has engaged in trademark infringement and unfair competition in violation of the statutory and common law of Michigan and/or any other state whose law is found to apply. Que's use of the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Que with GF and as to the origin, sponsorship, endorsement, affiliation, or approval by GF of

Que's products, services, and other commercial activity. Confusion is likely to occur if Que's use in commerce of the Infringing Marks does not stop.

43. Que's unauthorized use of the Infringing Marks in connection with goods and services that are identical or substantially similar and highly related to GF's Goods jeopardizes the entire goodwill symbolized by the GF Marks, causing immediate, serious, and irreparable injury to GF, for which GF has no adequate remedy at law.

## COUNT IV
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

44. GF incorporates by reference herein each of the foregoing paragraphs.

45. Que has caused a probability of confusion or misunderstanding as to the source, sponsorship, approval or certification by GF of Que's Goods.

46. Que has represented that Que's Goods have GF's sponsorship and/or approval that they do not have.

47. Que has willfully engaged in the deceptive methods and practices described above in violation of M.C.L. 445.903(1)(a), (c) and (f).

48. Que's deceptive practices have caused, and if not restrained by this Court, will continue to cause GF irreparable injury for which GF has no adequate remedy at law.

49. Unless Que is permanently enjoined from further deceptive practices, GF will continue to suffer irreparable harm.

50. Because Que has willfully engaged in deceptive practices, costs of suit and attorney's fees should be assessed against Que.

## PRAYER FOR RELIEF

WHEREFORE, GF respectfully prays that this Court enter an order and judgment in its favor and against Que as follows:

    A.    That GF owns enforceable rights in the GF Marks, and that all related registrations are valid;

    B.    That the GF Marks have been infringed by Que in violation of 15 U.S.C. § 1114(1).

    C.    That Que's use of the Infringing Marks infringes GF's rights in the GF Marks, and otherwise constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

    D.    That the GF Marks are protectable, valid, enforceable, and have been infringed by Que.

    E.    That Que, its agents, servants, employees, attorneys, and all persons in active concert or participation with them, be permanently enjoined and restrained from:

1. Using the Infringing Mark, or any variation thereof;
2. Using any mark that is confusingly similar to or a colorable imitation of the GF Marks; and
3. Otherwise infringing the GF Marks.

    F.    That Que has acted deliberately, willfully, intentionally, or with malicious intent;

    G.    That Que be required to pay GF such damages, statutory or otherwise, together with pre-judgment interest thereon, as GF has sustained as a consequence of Que's wrongful acts, and to account for and return to GF any monies, profits, and advantages wrongfully gained by Que.

    H.    That Que pay treble damages to GF, pursuant to 15 U.S.C. § 1117.

    I.    That Que pay to GF its reasonable attorney's fees, expenses and costs incurred in this action.

    J.    That Que deliver up for impoundment, and for destruction upon entry of judgment, all products, advertising, marketing materials, writings, signage, artwork, and other material,

including media, which infringe GF's rights, falsely designate its source or origin or otherwise facilitate Que's infringement of the GF Marks.

K. That Que be directed to file with this Court and serve on GF within thirty (30) days after the service of an injunction, a written report under oath setting forth in detail the manner and form in which Que have complied with this injunction.

L. That GF be granted such further relief as the Court may deem appropriate.

Dated: September 13, 2024                                   Respectfully submitted,

/s/ Brian D. Wassom
Brian D. Wassom (MI Bar No. P60381)
Warner Norcross + Judd LLP
12900 Hall Road., Suite 200
Sterling Heights, MI 48313
(586) 303-4139
bwassom@wnj.com

*Attorneys for Plaintiffs*